UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **U.S. SECURITIES AND EXCHANGE COMMISSION,** | |
| Plaintiff, | |
| -against- | |
| **SAEXPLORATION HOLDINGS, INC., JEFFREY H. HASTINGS, BRENT N. WHITELEY, BRIAN A. BEATTY, and MICHAEL J. SCOTT,** | Civil Action No. 1:20-CV-8423 (PGG) |
| Defendants, and | |
| **THOMAS W. O'NEILL and LORI E. HASTINGS,** | |
| Relief Defendants. | |

**CONSENT OF DEFENDANT MICHAEL J. SCOTT**

1.     Defendant Michael J. Scott ("Defendant") acknowledges having been served with the complaint in this action, enters a general appearance, and admits the Court's jurisdiction over Defendant and over the subject matter of this action.

2.     Defendant has pleaded guilty to criminal conduct relating to certain matters alleged in the complaint in this action.  Specifically, in *United States v. Scott*, Crim. No. 1:20-cr-534-GHW-3 (S.D.N.Y.) (the "Criminal Case"), Defendant pleaded guilty to violations of 18 U.S.C. §§ 2, 371, 1343, & 1349; 15 U.S.C. 78j(b) & 78ff; and 17 C.F.R. § 240.10b-5.  In connection with that plea, Defendant admitted the facts set out in the transcript of his plea allocution, which is attached as Exhibit A to this Consent.  This Consent shall remain in full force and effect regardless of the existence or outcome of any further proceedings in the

Criminal Case.

3.      Defendant hereby consents to the entry of the Judgment in the form attached

hereto (the "Judgment") and incorporated by reference herein, which, among other things:

> (a)      permanently restrains and enjoins Defendant from violations of, and/or
>
> aiding and abetting violations of, Section 17(a) of the Securities Act of
>
> 1933 ("Securities Act") [15 U.S.C. § 77q(a)]; and Section 10(b) of the
>
> Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5
>
> thereunder [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5]; Section 13(a)
>
> of the Exchange Act and Rules 12b-20, 13a-1, 13a-11, and 13a-13
>
> thereunder [15 U.S.C. § 78m(a) and 17 C.F.R. §§ 240.12b-20, 240.13a-1,
>
> 240.13a-11, and 240.13a-13]; Section 13(b)(2)(A) of the Exchange Act
>
> [15 U.S.C. § 78m(b)(2)(A)]; Section 13(b)(2)(B) of the Exchange Act [15
>
> U.S.C. § 78m(b)(2)(B)]; Section 13(b)(5) of the Exchange Act [15 U.S.C.
>
> § 78m(b)(5)]; and Exchange Act Rule 13b2-1 [17 C.F.R. § 240.13b2-1];
>
> and
>
> (b)      prohibits Defendant from acting as a director or officer of any issuer that
>
> has a class of securities registered pursuant to Section 12 of the Exchange
>
> Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section
>
> 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

4.      Defendant agrees that the Court shall order disgorgement of ill-gotten gains and

prejudgment interest thereon; and that the amount of the disgorgement shall be determined by the

Court upon motion of the U.S. Securities and Exchange Commission (the "Commission").

Defendant further agrees that, upon motion of the Commission, the Court shall determine

whether a civil penalty pursuant to Section 20 of the Securities Act [15 U.S.C. § 77t] and Section

21 of the Exchange Act [15 U.S.C. § 78u] is appropriate and, if so, the amount of the penalty.

Defendant further agrees that in connection with the Commission's motion for disgorgement

and/or civil penalties and at any hearing held on such a motion: (a) Defendant will be precluded

from arguing that he did not violate the federal securities laws as alleged in the Complaint; (b)

Defendant may not challenge the validity of this Consent or the Judgment; (c) solely for the

purposes of such motion, the allegations of the Complaint shall be accepted as and deemed true

by the Court; and (d) the Court may determine the issues raised in the motion on the basis of

affidavits, declarations, excerpts of sworn deposition or investigative testimony, and

documentary evidence, without regard to the standards for summary judgment contained in Rule

56(c) of the Federal Rules of Civil Procedure.  In connection with the Commission's motion for

disgorgement and/or civil penalties, the parties may take discovery, including discovery from

appropriate non-parties.

5.      Defendant agrees that, in the event the Court imposes a penalty against him, he

shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source

including but not limited to payment made pursuant to any insurance policy, with regards to any

civil penalty amounts that Defendant pays pursuant to the Judgment, regardless of whether such

penalty amounts or any part thereof are added to a distribution fund or otherwise used for the

benefit of investors.

6.      Defendant waives the entry of findings of fact and conclusions of law pursuant to

Rule 52 of the Federal Rules of Civil Procedure.

7.      Defendant waives the right, if any, to a jury trial and to appeal from the entry of

the Judgment.

8.      Defendant enters into this Consent voluntarily and represents that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant to enter into this Consent.

9.      Defendant agrees that this Consent shall be incorporated into the Judgment with the same force and effect as if fully set forth therein.

10.      Defendant will not oppose the enforcement of the Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waives any objection based thereon.

11.      Defendant waives service of the Judgment and agrees that entry of the Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant of its terms and conditions.  Defendant further agrees to provide counsel for the Commission, within thirty days after the Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that Defendant has received and read a copy of the Judgment.

12.      Consistent with 17 C.F.R. § 202.5(f), this Consent resolves only the claims asserted against Defendant in this civil proceeding.  Defendant acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein.  Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and

other regulatory organizations.  Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization.  This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding.  In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this action, Defendant understands that he shall not be permitted to contest the factual allegations of the complaint in this action.

13.     Defendant understands and agrees to comply with the terms of 17 C.F.R. § 202.5(e), which provides in part that it is the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegations in the complaint or order for proceedings."  As part of Defendant's agreement to comply with the terms of Section 202.5(e), Defendant acknowledges the guilty plea for related conduct described in paragraph 2 above, and: (i) will not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; (ii) will not make or permit to be made any public statement to the effect that Defendant does not admit the allegations of the complaint, or that this Consent contains no admission of the allegations; (iii) upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint; and (iv) stipulates for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, that the allegations in the complaint are true, and further, that any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Defendant under the Judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a

debt for the violation by Defendant of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. § 523(a)(19).  If Defendant breaches this agreement, the Commission may petition the Court to vacate the Judgment and restore this action to its active docket.  Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party..

14.     Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action.  For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

15.     In connection with this action and any related judicial or administrative proceeding or investigation commenced by the Commission or to which the Commission is a party, Defendant (i) agrees to appear and be interviewed by Commission staff at such times and places as the staff requests upon reasonable notice; (ii) will accept service by mail or facsimile transmission of notices or subpoenas issued by the Commission for documents or testimony at depositions, hearings, or trials, or in connection with any related investigation by Commission staff; (iii) appoints Defendant's undersigned attorney as agent to receive service of such notices and subpoenas; (iv) with respect to such notices and subpoenas, waives the territorial limits on service contained in Rule 45 of the Federal Rules of Civil Procedure and any applicable local rules, provided that the party requesting the testimony reimburses Defendant's travel, lodging, and

6

subsistence expenses at the then-prevailing U.S. Government per diem rates; and (v) consents to personal jurisdiction over Defendant in any United States District Court for purposes of enforcing any such subpoena.

16.     Defendant agrees that the Commission may present the Judgment to the Court for signature and entry without further notice.

17.     Defendant agrees that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Judgment.

Dated:   06/09/2021                              _____

                                                 Michael J. Scott

On June 9 , 2021, Michael J. Scott , a person known to me, personally appeared before me and acknowledged executing the foregoing Consent.

                                                 _____
                                                 Notary Public in and for the Province of Alberta, Canada
                                                 Commission expires: N/A –Lawyer

                                                 KELSEY E. MORRISON
                                                 Barrister, Solicitor
                                                 & Notary Public

Approved as to form:

Jillian Berman
_____
Jillian Blythe Berman
Lankler Siffert & Wohl
500 Fifth Ave., Ste. 33rd Floor
New York, NY 10110
(212) 921-8399
jberman@lswlaw.com

*Attorney for Defendant Michael J. Scott*

7

**EXHIBIT A**

L5QsSCOp

```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                            20 CR 534 (BM)

5   MICHAEL SCOTT,

6              Defendant.

7   ------------------------------x

8                                           New York, N.Y.
                                            May 26, 2021
9                                           11:00 a.m.

10

    Before:
11
                      HON. BARBARA C. MOSES,
12
                                        U.S. Magistrate Judge
13

14                          APPEARANCES

15  AUDREY STRAUSS
         United States Attorney for the
16       Southern District of New York
    GINA CASTELLANO
17  CHRISTINE MAGDO
         Assistant United States Attorneys
18
    LANKLER SIFFERT & WOHL LLP
19       Attorneys for Defendant
    BY:  JILLIAN BERMAN
20       RACHEL S. BERKOWITZ

21

22

23

24

25
```

L5QsSCOp

```
 1              (The Court and all parties appearing telephonically)
 2              THE COURT:  Good morning, ladies and gentlemen.
 3     Magistrate Judge Moses on the line.
 4              Mr. Snell, please call the case.
 5              (Case called)
 6              THE DEPUTY CLERK:  I am now going to call on the
 7     participants to make their appearances.
 8              Counsel for the government, please state and spell
 9     your name.
10              MS. CASTELLANO:  Good morning, your Honor.  Gina
11     Castellano for the government.  G-i-n-a, Castellano is
12     C-a-s-t-e-l-l-a-n-o.  And I am joined by my colleague, AUSA
13     Christine Magdo.  Magdo is M-a-g-d-o.
14              THE COURT:  Good morning, Ms. Castellano and
15     Ms. Magdo.
16              Let's go now to the defense side of our virtual
17     courtroom.
18              MS. BERMAN:  Good morning, your Honor.  This is
19     Jillian Berman of Lankler Siffert & Wohl for the defendant,
20     Mike Scott, who is here telephonically.  My colleague, Rachel
21     Berkowitz, also of Lankler Siffert & Wohl, is here.  I would
22     also alert the court that we are on video with our client,
23     Rachel Berkowitz and myself and our client are on video, so we
24     can see Mr. Scott and he can see us, even though we are only on
25     audio with the court.
```

L5QsSCOp

```
1              THE COURT:  I think I understood that.  Thank you.

2              Good morning, Ms. Berman and Ms. Berkowitz.

3              Good morning, Mr. Scott.

4              Mr. Scott?

5              THE DEFENDANT:  Good morning.

6              THE COURT:  OK.  Good morning.

7              Do we have anybody from law enforcement or pretrial

8   services participating in this morning's proceeding?

9              MS. JACKSON:  Good morning, your Honor.  Dominique

10  Jackson here from pretrial services.

11             THE COURT:  I know how to spell your last name,

12  Ms. Jackson, but you still have to do it.

13             MS. JACKSON:  Sorry about that.  D-o-m-i-n-i-q-u-e,

14  last name J-a-c-k-s-o-n from pretrial services.

15             THE COURT:  Thank you very much.  And good morning,

16  Ms. Jackson.

17             Anybody else who needs to make an appearance?

18             (Pause)

19             OK.  Mr. Scott, for the record, I'm not really

20  concerned about this, but I will ask you anyway.

21             Do you speak and understand English fluently?

22             THE DEFENDANT:  Yes, I do, your Honor.

23             THE COURT:  Thank you very much.

24             I'm now going to go down the list of everyone who has

25  made an appearance, and if you could just, now that everyone
```

L5QsSCOp

1    has spoken, if you could just confirm for me that you are all

2    able to clearly hear the court, all of the lawyers, the

3    defendant, and pretrial services.

4              I'll begin with Ms. Castellano.

5              MS. CASTELLANO:  I can clearly hear.  Thank you.

6              THE COURT:  Great.

7              Ms. Magdo?

8              MS. MAGDO:  Yes, your Honor.

9              THE COURT:  Thank you.

10             Ms. Berman?

11             MS. BERMAN:  Yes, your Honor.

12             THE COURT:  Ms. Berkowitz?

13             MS. BERKOWITZ:  Yes, your Honor.

14             THE COURT:  Ms. Jackson?

15             MS. JACKSON:  Yes, your Honor.

16             THE COURT:  And Mr. Scott?

17             THE DEFENDANT:  Yes, your Honor.

18             THE COURT:  Great.

19             We are here for Mr. Scott's initial appearance,

20   presentment, arraignment, and I'm told change of plea.  But

21   before we can get to all of these matters, I need to take care

22   of some preliminaries, due to the fact that we are conducting

23   this conference remotely via teleconference because of the

24   continuing effects of the COVID-19 pandemic.

25             We are on a teleconference rather than a video

L5QsSCOp

1    conference because the capacity and reliability of our current

2    technical facilities here in the Southern District of New York

3    are such that I deem video conferencing not reasonably

4    available for this particular proceeding.  I therefore find

5    that telephonic conferencing is an acceptable way to proceed,

6    and I note that it is authorized by Section 15002 of the CARES

7    Act and by standing orders of this court.

8              I also find that it would be impractical and imprudent

9    to insist on the defendant's physical signature, his ink

10   signature, on any documents that may be required today.

11   Accordingly, pursuant to the CARES Act and standing orders of

12   the court, I conclude that any necessary signatures may be

13   obtained, executed, or transmitted electronically.

14   Alternatively, the defendant may, if he wishes, consent to have

15   counsel or the court sign any necessary form on his behalf.

16             Because we are on the phone and there are a lot of us,

17   I remind the participants to be careful to speak one at a time.

18   It is helpful if you mute your line when you're not speaking to

19   cut down on background noise.  But it is even more important

20   that you unmute yourself when it is time for you to speak.

21   Please do interrupt.  This is the one time you're allowed to

22   interrupt.  And let me know if for some reason you cannot hear

23   or understand what is being said by someone else, and we will

24   try to fix the problem.

25             Our teleconference line is open to the public,

L5QsSCOp

1    including the press, on a listen-only basis.  If you are on

2    that line, I ask that you mute the line at your end and keep it

3    on mute.  Please be aware that just as if you were physically

4    in my courtroom, all of you are prohibited from making any home

5    audio or video recording or from rebroadcasting court

6    proceedings.

7        Let me begin, since we are conducting this proceeding

8    remotely, Ms. Berman, by asking you, tell me where your client

9    is physically located and confirm for me that you had an

10   opportunity to consult with him privately in advance of this

11   morning's proceeding.

12        MS. BERMAN:  Yes, your Honor.

13        My client, Mr. Scott, is physically located at his

14   home in Canada.  And we have had an opportunity to consult

15   about this proceeding prior to appearing before the court.

16        THE COURT:  That was a confidential consultation,

17   correct?

18        MS. BERMAN:  Correct, your Honor.

19        THE COURT:  And you were able to cover both the

20   substance of what would happen today and also the fact that I

21   would need the defendant's consent to proceed remotely, is that

22   right?

23        MS. BERMAN:  Yes, your Honor.  We have covered all of

24   that.

25        THE COURT:  Thank you very much.

L5QsSCOp

1              Mr. Scott, normally, of course, everybody

2    participating in this proceeding would be physically present

3    with me in my courtroom.  You do have the right to be

4    physically present in court for most phases of a criminal case

5    against you, but that right can be waived.

6              Did you discuss these facts with your lawyer when you

7    spoke to her before we got on the phone today?

8              THE DEFENDANT:  Yes, I did, your Honor.

9              THE COURT:  I've been present with two copies of two

10   waiver forms relevant to the remote situation.  One is

11   called --

12             Kevin, did we lose someone?

13             THE DEPUTY CLERK:  No.  Someone just joined.

14             THE COURT:  One is called consent to proceed by video

15   or teleconference.  It states that you voluntarily consent to

16   participate in a variety of proceedings, including this one,

17   via video conferencing or teleconferencing, and it appears to

18   bear your signature.

19             Did you sign that consent form, Mr. Scott, after

20   consultation with counsel?

21             THE DEFENDANT:  Yes, I did, your Honor.

22             THE COURT:  I have a second form which says waiver

23   of right to be present at a criminal proceeding, which

24   specifically pertains to a plea of guilty and which also

25   appears to bear your signature.

L5QsSCOp

1          Did you sign that form as well?

2          THE DEFENDANT:  Yes, I did, your Honor.

3          THE COURT:  And I will ask you on the record, do you

4    agree to participate in all phases of today's proceeding,

5    including a plea of guilty, without having your lawyer

6    physically present beside you and without yourself being

7    physically in my courtroom?

8          THE DEFENDANT:  Yes, I do, your Honor.

9          THE COURT:  Thank you very much.

10          I find that the defendant has knowingly and

11    voluntarily agreed to participate in this proceeding by

12    telephone conference after consultation with counsel.

13          Let us turn to the substance of the business at hand.

14    It is my understanding, Ms. Castellano, that this defendant has

15    not been previously charged by complaint or otherwise, and that

16    the information, which I have received a copy of, is the first

17    charging document in the case.

18          Is that correct?

19          MS. CASTELLANO:  It is, your Honor.

20          THE COURT:  All right.  So the first thing we will do

21    then is we will take the defendant's waiver of indictment, and

22    I will ask my courtroom deputy, Mr. Snell, to take that waiver.

23          THE DEPUTY CLERK:  Thank you, Judge.

24          You are Michael Scott?

25          THE DEFENDANT:  Yes, I am.

L5QsSCOp

1          THE DEPUTY CLERK:  Have you signed the waiver of

2     indictment?

3          THE DEFENDANT:  Yes, I have.

4          THE DEPUTY CLERK:  Before you signed it, did you

5     discuss it with your attorney?

6          THE DEFENDANT:  Yes, I had.

7          THE DEPUTY CLERK:  Did your attorney explain it to

8     you?

9          THE DEFENDANT:  Yes, she did.

10          THE DEPUTY CLERK:  Do you understand what you are

11     doing?

12          THE DEFENDANT:  Yes, I do.

13          THE DEPUTY CLERK:  Do you understand that you are

14     under no obligation to waive indictment?

15          THE DEFENDANT:  Yes, I do.

16          THE DEPUTY CLERK:  Do you understand that if you do

17     not waive indictment, if the government wants to prosecute you,

18     they would have to present this case to a grand jury, which may

19     or may not indict you?

20          THE DEFENDANT:  Yes, I do.

21          THE DEPUTY CLERK:  Do you understand that by signing

22     this waiver of indictment, you have given up your right to have

23     this case presented to a grand jury?

24          THE DEFENDANT:  Yes, I do.

25          THE DEPUTY CLERK:  Do you understand what a grand jury

L5QsSCOp

```
 1    is?

 2              THE DEFENDANT:  Yes, I do.

 3              THE DEPUTY CLERK:  Have you seen a copy of the

 4    information?

 5              THE DEFENDANT:  Yes, I have.

 6              THE DEPUTY CLERK:  Do you waive its public reading?

 7              THE DEFENDANT:  Yes, I do.

 8              THE DEPUTY CLERK:  Thank you.

 9              THE COURT:  Thank you very much, Mr. Snell.

10              Now that you have been charged, Mr. Scott, let me

11    explain to you what is going to happen next.

12              I am going to more officially, even more officially

13    than Mr. Snell has already done, inform you of the charges

14    against you.  We will consider whether counsel should be

15    appointed for you and decide under what conditions, if any, you

16    shall be released pending trial, which we may defer under the

17    circumstances.

18              Let me ask the government first, the defendant is not

19    under arrest, is that correct?

20              MS. CASTELLANO:  That's correct, your Honor.

21              THE COURT:  All right.  This was an arranged

22    appearance, correct?

23              MS. CASTELLANO:  That's correct.

24              THE COURT:  All right.  So, Mr. Scott, I will explain

25    certain constitutional rights that you have.  You have the
```

1    right to remain silent.  You are not required to make any

2    statements.  Even if you have already made statement to the

3    authorities, you are not required to make any further

4    statements.  Any statements that you do make can be used

5    against you.

6             You have the right to be released, either

7    conditionally or unconditionally, pending trial unless I find

8    that there are no conditions that would reasonably assure the

9    safety of the community and your presence in court when

10   required.

11            If you are a foreign national, which you appear to be,

12   you have the right to request that a consular officer from your

13   country of origin be notified of your arrest.  In some cases, a

14   treaty or other agreement may require the United States

15   Government to give that notice, whether you request it or not.

16   I'm just looking at the pretrial services report to see whether

17   it covers Canada as a mandatory notification nation.

18            Do you know the answer to that, Ms. Castellano?

19            MS. CASTELLANO:  I don't, your Honor.  But as I said

20   earlier, Mr. Scott was not arrested in this case.

21            THE COURT:  I understand he is not presently under

22   arrest, but he has been charged, so that may bring the

23   notification provision into effect.  I will leave that to your

24   office to figure out.

25            MS. CASTELLANO:  I will do that, your Honor.

L5QsSCOp

1        THE COURT:  Mr. Scott, you have the right to be

2   represented by an attorney during all court proceedings,

3   including this one, and during all questioning by the

4   authorities.  If you cannot afford an attorney, I will appoint

5   one today to represent you.

6        I take it, Ms. Berman, that your firm has been

7   retained and that there is no application for appointed

8   counsel, is that correct?

9        MS. BERMAN:  That's correct, your Honor.

10       THE COURT:  All right.  So turning now to the

11  information, which I know you have read, Mr. Scott, because you

12  told Mr. Snell that you have read it, let me summarize for you

13  nonetheless that you are charged in Count One with conspiracy

14  to commit securities fraud, making false filings with the SEC,

15  and making false filings to auditors, in violation of Title 18

16  of the United States Code, Section 371.

17       You are charged in Count Two with securities fraud, in

18  violation of 15, United States Code, Sections 78jband 78ff and

19  related SEC regulations.

20       You are charged in Count Three with conspiracy to

21  commit wire fraud, in violation of 18, United States Code,

22  Section 1349.

23       And you are charged in Count Four with wire fraud in

24  violation of 18, United States Code, Section 1343 and 2.

25       Counsel, have you had the opportunity to review the

L5QsSCOp

1    information with your client and do you waive a detailed

2    reading of the charges?

3         MS. BERMAN:  Yes, we have reviewed it with our client

4    and we waive public reading.

5         THE COURT:  All right.  For arraignment purposes,

6    counsel, what plea shall I enter to the information?

7         MS. BERMAN:  Your Honor, Mr. Scott intends to plead

8    guilty to all four counts in the information.

9         THE COURT:  Right.

10        MS. BERMAN:  I don't know --

11        THE COURT:  This is where you're supposed to say that

12   he pleads not guilty.

13        MS. BERMAN:  He enters a plea of not guilty at this

14   point, your Honor.

15        THE COURT:  A plea of not guilty will be entered to

16   the information, and the record should reflect that the

17   defendant has been arraigned.

18        In accordance with Rule 5(f) of the Federal Rules of

19   Criminal Procedure, I now direct the prosecution to comply with

20   its obligation under Brady v. Maryland and its progeny to

21   disclose to the defense all information, whether admissible or

22   not, that is favorable to the defendant, material either to

23   guilt or to punishment, and known to the prosecution.

24        Possible consequences for noncompliance may include

25   dismissal of individual charges or the entire case, exclusion

L5QsSCOp

1   of evidence, and professional discipline or court sanctions on

2   the attorneys responsible.

3           I will be entering a written order more fully

4   describing this obligation and the possible consequences of

5   failing to meet it, and I direct the prosecution to review and

6   comply with that order.

7           Ms. Castellano, does the government confirm that it

8   understands its obligations under <u>Brady</u> and progeny and will

9   comply with them?

10          MS. CASTELLANO:  Yes, your Honor.

11          THE COURT:  Thank you very much.

12          I take it that there is no request to exclude time

13   because we are about to entertain a plea?

14          MS. CASTELLANO:  That's correct, your Honor.

15          THE COURT:  OK.  One moment, please.

16          Ms. Berman, as you told me earlier, your client is now

17   prepared to change his plea and plead guilty to Counts One

18   through Four of the information, is that correct?

19          MS. BERMAN:  Yes, your Honor.

20          THE COURT:  OK.  I have another form here somewhere

21   entitled consent to proceed before a United States Magistrate

22   Judge on a felony plea allocution.  Mr. Scott, this form also

23   appears to bear your signature.

24          Did you sign the consent to proceed before a

25   magistrate form?

L5QsSCOp

1              THE DEFENDANT:  Yes, I did, your Honor.

2              THE COURT:  As you know, what this form says is that

3    you have a right to have your plea taken by a United States

4    District Judge, but you are agreeing to have your plea taken by

5    a United States Magistrate Judge, which is what I am.

6              As a magistrate judge, I have the authority to take

7    your plea with your consent, and you are entitled to all of the

8    same rights and protections as if you were before a district

9    judge.  If you are found guilty, you will be sentenced by the

10   district judge presiding over your case.

11             Did you sign this consent form voluntarily?

12             THE DEFENDANT:  Yes, I did, your Honor.

13             THE COURT:  Before you signed the form, did your

14   lawyer explain it to you?

15             THE DEFENDANT:  Yes, she did.

16             THE COURT:  Do you wish to proceed with your plea

17   before me today?

18             THE DEFENDANT:  Yes, I do, your Honor.

19             THE COURT:  Thank you very much.

20             Your consent is accepted.  Now I need to hear it from

21   you.

22             Mr. Scott, is it your wish to enter a plea?

23             Mr. Scott, can you confirm to me that it is your

24   intention today to change your plea and to enter a plea of

25   guilty to Counts One through Four of the information?

L5QsSCOp

1          THE DEFENDANT:  Yes, it is, your Honor.

2          THE COURT:  Thank you.

3          Before deciding whether to accept your guilty plea, I

4  need to ask you a series of questions.  It is very important

5  that you answer these questions honestly and completely.  The

6  purpose of the questions is to make sure that you understand

7  your rights, to make sure that you are pleading guilty of your

8  own free will, and to make sure that you are pleading guilty

9  because you are guilty and not for any other reason.

10          Do you understand what I'm saying?

11          THE DEFENDANT:  Yes, I do, your Honor.

12          THE COURT:  If you don't understand any of the

13  questions I ask or if you simply want a moment to consult with

14  your lawyer, please let me know, I will give you that time.  It

15  is important that you understand every question before you

16  answer.

17          Are you ready?

18          THE DEFENDANT:  Yes, I am.  Thank you.

19          THE COURT:  I will ask the courtroom deputy to swear

20  the defendant, please.

21          (Defendant sworn)

22          Mr. Scott, you are now under oath.  What that means is

23  that if you answer any of my questions falsely, intentionally

24  falsely, you could be prosecuted for perjury based on those

25  answers.

L5QsSCOp

```
1              What is your full name, please?
2              THE DEFENDANT:  Michael James Scott.
3              THE COURT:  How old are you, Mr. Scott?
4              THE DEFENDANT:  I am 63.
5              THE COURT:  And you are not a United States citizen,
6    is that correct?
7              THE DEFENDANT:  That is correct.
8              THE COURT:  Are you a citizen of Canada?
9              THE DEFENDANT:  Yes, I am.
10             THE COURT:  Thank you.
11             What is your highest educational level, please?
12             THE DEFENDANT:  High school graduation.
13             THE COURT:  You're a high school graduate.
14             No college?
15             THE DEFENDANT:  No.  I attended a couple of semesters,
16   but didn't get any degrees.
17             THE COURT:  No degrees beyond high school?
18             THE DEFENDANT:  Correct.
19             THE COURT:  All right.  Can you read and write?
20             THE DEFENDANT:  Yes, I can.
21             THE COURT:  Are you now or have you recently been
22   under the care of a doctor, a psychiatrist, or a psychologist
23   for any reason?
24             THE DEFENDANT:  No, I have not.
25             THE COURT:  Do you have any condition that affects
```

L5QsSCOp

1    your ability to see or to hear?

2             THE DEFENDANT:  I do not.

3             THE COURT:  Do you have any condition that affects

4    your ability to think or to understand or to make judgments or

5    decisions on your own behalf?

6             THE DEFENDANT:  I do not.

7             THE COURT:  During the last 24 hours, have you

8    consumed any alcoholic beverages?

9             THE DEFENDANT:  No, I have not.

10            THE COURT:  In the last 24 hours, have you taken any

11   drugs, medicine or pills, that affect your mental processes,

12   whether or not prescribed by a doctor?

13            THE DEFENDANT:  No, I have not.

14            THE COURT:  Is your mind clear today?

15            THE DEFENDANT:  Yes, it is, your Honor.

16            THE COURT:  Do you understand what is happening in

17   this proceeding?

18            THE DEFENDANT:  Yes, I do.

19            THE COURT:  Does any counsel in this matter have any

20   objections to Mr. Scott's competence to plead at this time?

21            MS. BERMAN:  No, your Honor.

22            MS. CASTELLANO:  No from the government, your Honor.

23            THE COURT:  Thank you very much.

24            Mr. Scott, you have received and read a copy of the

25   information that contains the charges against you, is that

L5QsSCOp

1     correct?

2              THE DEFENDANT:  That's correct, your Honor, yes.

3              THE COURT:  Would you like me to read it to you now?

4              THE DEFENDANT:  I have gone through it numerous times.

5     I am aware of the charges.

6              THE COURT:  OK.  It is an offer.  You don't have to

7     say yes, but would you like me to read it to you?

8              THE DEFENDANT:  I'm sorry.  No, that's fine.

9              THE COURT:  OK.  Do you understand what it says you

10    did?

11             THE DEFENDANT:  Yes, I do.

12             THE COURT:  Have you had time to talk to your attorney

13    about the charges and about how you wish to plead?

14             THE DEFENDANT:  Yes, I have.

15             THE COURT:  Has your attorney explained the

16    consequences of pleading guilty?

17             THE DEFENDANT:  Yes, she has.

18             THE COURT:  OK.  I am now going to explain certain

19    constitutional rights that you have.  These are rights that you

20    have now, but that you will be giving up if you enter a guilty

21    plea.

22             Please listen carefully to what I am about to say, and

23    again, if you don't understand something, feel free to stop me,

24    and either I or your attorney will explain the issue more

25    fully.

L5QsSCOp

1          Under the Constitution and laws of the United States,

2    you have a right to plead not guilty to all of the charges

3    against you.

4          Do you understand that?

5          THE DEFENDANT:  Yes, I do.

6          THE COURT:  If you plead not guilty, you will be

7    entitled, under the Constitution and laws of the United States,

8    to a speedy and public trial by jury.  At trial you would be

9    presumed innocent.  The government would be required to prove

10   you guilty beyond a reasonable doubt before you could be found

11   guilty.  You could not be convicted unless a jury of 12 people

12   agreed unanimously that you are guilty beyond a reasonable

13   doubt.

14         Do you understand that?

15         THE DEFENDANT:  Yes, I do.

16         THE COURT:  If you go to trial, then at that trial and

17   at every stage of the case, you would have the right to be

18   represented by an attorney.  If you could not afford an

19   attorney, an attorney would be appointed to represent you at

20   the government's expense.

21         Even if you began with retained counsel, that is

22   private defense counsel, if you should run out of money, an

23   attorney would be appointed at that time to continue to

24   represent you.  You would be entitled to an attorney all the

25   way through trial and not just for a guilty plea.  So your

L5QsSCOp

 1  decision to plead guilty should not depend on whether you can

 2  afford to hire a lawyer.

 3          Do you understand that?

 4          THE DEFENDANT:  Yes, I do, your Honor.

 5          THE COURT:  During trial the witnesses for the

 6  prosecution would have to come to court and testify in your

 7  presence where you could see them and hear them and your lawyer

 8  could cross-examine them.  If you wanted, your lawyer could

 9  offer evidence on your behalf as well, defense evidence.

10          Your lawyer would be able to use the court's power,

11  known as subpoena power, to compel witnesses to come to court

12  to testify even if they did not want to come.

13          Do you understand that?

14          THE DEFENDANT:  Yes, I do, your Honor.

15          THE COURT:  At trial you would have the right to

16  testify in your own defense if you wanted to.  You would also

17  have the right not to testify.  And if you chose not to

18  testify, that could not be used against you in any way.  No

19  inference or suggestion of guilt would be permitted from the

20  fact that you did not testify.

21          Do you understand that?

22          THE DEFENDANT:  Yes, I do, your Honor.

23          THE COURT:  If you are convicted at trial, if you were

24  convicted at trial, you would have the right to appeal that

25  verdict to a higher court.

L5QsSCOp

```
1            Do you understand that?
2            THE DEFENDANT:  Yes, I do.
3            THE COURT:  As I have said before, you have the right
4  to plead not guilty.  Even today, although you dialed into this
5  conference call for the purpose of entering a guilty plea, you
6  have the right to change your mind, persist in your not guilty
7  plea, and go to trial.  If you do plead guilty and if the court
8  accepts your plea, you will give up the right to a trial and
9  the rights that go with it that I have just described.  If you
10  plead guilty, there won't be any trial.  All that will remain
11  to be done will be to impose a sentence.  You and the
12  government will have a chance to make arguments about what
13  sentence you should get, but there won't be any further trial
14  to determine whether you are guilty or not guilty of the
15  charges to which you pled guilty.
16            Do you understand that?
17            THE DEFENDANT:  Yes, I do, your Honor.
18            THE COURT:  Do you also understand that the decision
19  as to the appropriate sentence in your case will be entirely up
20  to the sentencing judge, not me and not the government
21  attorneys.  That judge will be limited only by what the law
22  requires.
23            THE DEFENDANT:  Yes, I do.
24            THE COURT:  What this means is that even if you are
25  surprised or disappointed by your sentence, you will still be
```

L5QsSCOp

1    bound by your guilty plea.

2              Do you understand that?

3              THE DEFENDANT:  Yes, I do.

4              THE COURT:  Finally, if you do plead guilty, you are

5    also giving up your right to remain silent.  You are giving up

6    your right not to incriminate yourself.  I will ask you

7    questions about what you did in order to satisfy myself that

8    you are actually guilty.  So by pleading guilty, you will be

9    admitting your factual as well as your legal guilt.

10             Do you understand that?

11             THE DEFENDANT:  Yes, I do, your Honor.

12             THE COURT:  All right.  We went over the charges in

13   the information just a moment ago, but to recap, you are

14   charged in Count One with conspiracy to commit securities fraud

15   and Count Two with securities fraud and Count Three with

16   conspiracy to commit wire fraud and in Count Four with wire

17   fraud.

18             I am going to ask the Assistant United States Attorney

19   to state the elements of those charges.  I think we will do all

20   four at once, Ms. Castellano.  The elements, Mr. Scott, are the

21   things that the government would have to prove at trial.

22             Counsel, go ahead.

23             MS. CASTELLANO:  Thank you, your Honor.

24             As to Count One, there are three elements.

25             First, that there existed an agreement or

L5QsSCOp

understanding to commit the object crimes charged in the
information;

Second, that the defendant knowingly and willfully
became a member of the conspiracy; and

Third, that any one of the conspirators knowingly and
willfully committed at least one overt act in furtherance of
the conspiracy during the life of the conspiracy.

This count in the information has three objects, and I
will go through the elements of those objects now.

I will also note, your Honor, that object one, which
is securities fraud, is substantive count charged in Count Two
of the information, so the same elements will apply.

The elements are that:

First, in connection with the purchase or sale of
stock or shares in a company, the defendant did any one or more
of the following:

One, employed a device, scheme, or artifice to
defraud; or

Two, made an untrue statement of a material fact, or
omitted to state a material fact, which made what was said
under the circumstances misleading; or

Three, engaged in an act, practice, or course of
business that operated or would operate as a fraud or deceit
upon a purchaser or seller.

The second element is that the defendant acted

knowingly, willfully, and with the intent to defraud.

The third element is that the defendant used or caused to be used any means or instruments of transportation or communication in interstate commerce or the use of the mail in furtherance of the fraudulent conduct.

The second object filed with the SEC has two elements:

First, that the company at issue here, SA Exploration was required by the Securities Exchange Act of 1934 to file the document charged in that count;

Second, that the defendant knowingly and willfully made or caused to be made a material false or misleading statement in that document.

The third object, false statements to auditors, has the following elements:

That two or more persons agreed that the directors or officers of a public company would, directly or indirectly, make or cause to be made a materially false or misleading statement, or that those officers or directors would, directly or indirectly, omit to state or cause another person to omit to state a material fact necessary in order to make the statements made in light of the circumstances under which such statements were made, not misleading.

Second, that such material false statements or omissions must be made to an accountant in connection with, one, an audit or examination of the financial statements of the

L5QsSCOp

1  company, or two, the preparation or filing of any document or

2  report required to be filed with the SEC.

3          As I said before, I've already gone through the

4  elements for Count Two, securities fraud, unless your Honor

5  would like me to repeat those again.

6          THE COURT:  I do not need you to repeat those again.

7          Ms. Berman, would you or your client like to hear the

8  elements of Count Two repeated?

9          They were included within Count One.

10         MS. BERMAN:  No, your Honor.

11         THE COURT:  You can continue, Ms. Castellano.

12         MS. CASTELLANO:  Thank you.

13         Count Three is conspiracy to commit wire fraud.  The

14  elements are:

15         First, the existence of the conspiracy, that is the

16  existence of an agreement or understanding to commit the

17  unlawful object of the charged conspiracy, which in this case

18  is wire fraud;

19         Second, that the defendant willfully and knowingly

20  became a member of the conspiracy with the intent to further

21  its illegal purpose, that is, with the intent to commit the

22  object of the charged conspiracy, again here, which is wire

23  fraud.

24         And wire fraud is what is charged in Count Four.

25  The elements are that, in or about the timed alleged in the

L5QsSCOp

information, there was a scheme or artifice to defraud others

of money or property by false or fraudulent presentences,

representations, or promises;

          Second, that the defendant knowingly and willfully

devised or participated in the scheme or artifice to defraud

with knowledge of its fraudulent nature and with the specific

intent to defraud;

          Third, that in the execution of that scheme, the

defendant used or caused the use by others of interstate or

foreign wires.

          The government would have to prove venue by a

preponderance of the evidence, and as a preview for your Honor,

I plan to proffer venue at the appropriate time during this

proceeding.

          THE COURT:  OK.  Is that everything?

          MS. CASTELLANO:  That is everything, your Honor.

          THE COURT:  OK.  Thank you very much, Ms. Castellano.

          Mr. Scott, I am now going to tell you the maximum

possible penalties for these four crimes.

          The maximum penalties mean the most that could

possibly be imposed.  What I am about to tell you does not mean

that this is what you will receives punishment for the crimes

to which you intend to plead guilty, but by pleading guilty,

you are exposing yourself to the possibility of receiving a

punishment or combination of punishments up to the maximum.

L5QsSCOp

1        Do you understand that?

2        THE DEFENDANT:  Yes, I do, your Honor.

3        THE COURT:  All right.  With respect to Count One,

4   which charges you with conspiracy to commit securities fraud,

5   the maximum term of imprisonment is five years, five years in

6   prison, which could be followed by a term of supervised release

7   of up to three years.  If you are sentenced to supervised

8   release, what that means is you will be subject to supervision

9   by the probation department after you are released from prison.

10  If you were to violate any condition of that supervised

11  release, the court could revoke the term of supervised release

12  previously imposed and return you to prison without giving you

13  credit for time previously served on post-release supervision.

14       Count One also carries a financial penalty, a fine, in

15  the amount of $250,000 or twice the profits of the criminal

16  activity or twice what someone other than yourself lost because

17  of the criminal activity, whichever is greater.

18       Count Two, as you know, charges you with securities

19  fraud.  Count Two carries a maximum sentence of imprisonment of

20  20 years, a maximum term of supervised release of three years,

21  and a maximum fine of $5 million or twice the profits of the

22  criminal activity or twice what someone other than yourself

23  lost because of the criminal activity, whichever is greater.

24       Count Three, which charges you with conspiracy to

25  commit wire fraud, carries a maximum term of imprisonment of

L5QsSCOp

1  20 years, a maximum term of supervised release of three years,

2  and a maximum fine of $250,000 or twice what someone other than

3  yourself lost because of the criminal activity or twice the

4  profits of the criminal activity, whichever is greater.

5          Finally, Count Four, which charges you with wire

6  fraud, carries a maximum term of imprisonment of 20 years, a

7  maximum term of supervised release of three years, and a

8  maximum fine of $250,000 or twice the profits of the criminal

9  activity or twice what someone other than yourself lost because

10  of that criminal activity, whichever is greater.

11          In addition, I am required by law to tell you that

12  there is an additional special assessment, an extra fine, of

13  $100, which is required to be imposed on the each count of

14  conviction.

15          You can also be required to pay restitution to any

16  victims of the crimes in an amount that the court decides is

17  required to compensate them for their injuries.  And by

18  pleading guilty in this case, you will admit to the forfeiture

19  allegations contained in the information and agree to forfeit

20  any property within the scope of 18, United States Code,

21  Section 981(a)(1)(C), or 28, United States Code, Section

22  2461(c).

23          Now, because you are not a citizen of the United

24  States, I must also advise you that your guilty plea will

25  likely have adverse consequences for your ability to return to

L5QsSCOp

1    or remain in the United States.  Those consequences can include

2    removal, deportation, denial of citizenship, should you apply,

3    and denial of admission to the United States in the future.

4             Do you understand that these consequences may be

5    mandatory?

6             THE DEFENDANT:  Yes, I do.

7             THE COURT:  If that does happen, you will still be

8    bound by your guilty plea.  That is, you will not be able to

9    withdraw it, regardless of any advice you have received from

10   your counsel or from anyone else regarding the immigration

11   consequences of your plea.

12            Do you understand that?

13            THE DEFENDANT:  Yes, I do, your Honor.

14            THE COURT:  Mr. Scott, has anyone threatened you or

15   coerced you in any way to get you to plead guilty?

16            THE DEFENDANT:  No, your Honor.

17            THE COURT:  It is my understanding that there is a

18   written plea agreement between you and the government.  It is

19   contained in a letter dated May 19, 2021, addressed to

20   Ms. Berman and Ms. Berkowitz.  The copy that I have does not

21   appear to have your signature on the last page, Mr. Scott.

22            Have you seen and have you counter signed the May 19

23   plea agreement?

24            THE DEFENDANT:  Yes, I have, and I have signed it.

25            THE COURT:  OK.

L5QsSCOp

1          THE DEFENDANT:  On the 25th of May.

2          THE COURT:  Thank you very much.

3          I will take a look in the file after I get off the

4     phone call and make sure we have a copy of that.  If not, we

5     will request a copy from counsel.

6          Did you read the plea agreement before you signed it?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Did you discuss it with your attorneys?

9          THE DEFENDANT:  Yes, your Honor.

10          THE COURT:  Do you understand its terms?

11          THE DEFENDANT:  Yes, your Honor.

12          THE COURT:  Has anyone promised you anything or

13     offered you anything in order to get you to plead guilty other

14     than what is actually in the plea agreement?

15          THE DEFENDANT:  No, your Honor.

16          THE COURT:  All right.  I note that your plea

17     agreement refers to the possibility that the government may

18     advise the sentencing judge by letter that you have given the

19     government substantial cooperation that could lead to a

20     reduction in your potential prison sentence.

21          Do you understand that the agreement does not

22     absolutely require the government to do this?

23          THE DEFENDANT:  Yes, I do.

24          THE COURT:  Do you understand that the government may

25     choose not to submit such a letter based on its own assessment

L5QsSCOp

of your compliance with the plea agreement and the extent of

your cooperation?

          THE DEFENDANT:  Yes, I am aware, your Honor.

          THE COURT:  Thank you.

          Do you understand that under the terms of your plea

agreement, even if you later learn that the government withheld

from your counsel information that would have been helpful to

you in defending yourself at trial, you will not be able to

complain about that or withdraw your guilty plea on that basis?

          THE DEFENDANT:  Yes, your Honor.

          THE COURT:  Do you understand that the terms of the

plea agreement, including any recommendations that may later be

made by the government related to sentencing, are not binding

on the sentencing judge?

          THE DEFENDANT:  Yes, your Honor.

          THE COURT:  The sentencing judge may reject such

representations and could impose a more severe sentence than

you expect without permitting you to withdraw your plea of

guilty.  The sentencing judge will be required to make his own

independent calculation of the appropriate sentencing range for

you under a part of our law called the sentencing guidelines,

and will also have the discretion to give you a sentence below

that range or above that range up to the maximum that I told

you about earlier.

          In addition to the guidelines and possible departures

L5QsSCOp

1    from the guidelines, the sentencing judge will consider the

2    factors set forth at 18, United States Code, Section 3553(a).

3    In other words, the sentencing judge will pronounce whatever

4    sentence he believes is the appropriate sentence for you, even

5    if that sentence is different from the one recommended by the

6    government as a result of your cooperation.

7              Do you understand that?

8              THE DEFENDANT:  Yes, I do, your Honor.

9              THE COURT:  The court will consider a presentence

10   report that will be prepared by the probation department in

11   advance of your sentencing.  Before you are sentenced, you and

12   the government will have the opportunity to challenge the facts

13   reported in the probation report.

14             Do you understand, Mr. Scott, that in our federal

15   system, there is no parole?  If you are sentenced to prison, in

16   other words, you are not be released on parole?

17             THE DEFENDANT:  Yes, I am aware, your Honor.

18             THE COURT:  OK.  Before I go on, let me ask the

19   government and defense counsel if there are any other

20   provisions of the plea agreement that you would like me to go

21   over with Mr. Scott, Ms. Castellano?

22             MS. CASTELLANO:  No, your Honor.  Thank you.

23             THE COURT:  Ms. Berman?

24             MS. BERMAN:  No, your Honor.  Thank you.

25             THE COURT:  All right.  One more time, Mr. Scott,

L5QsSCOp

```
 1   because it is an important question:  Have any promises been
 2   made to you to influence you to plead guilty, other than what
 3   is in your written plea agreement?
 4             THE DEFENDANT:  No, there has not been, your Honor.
 5             THE COURT:  Have any premises been made to you
 6   concerning the actual sentence that you will ultimately
 7   receive?
 8             THE DEFENDANT:  No, your Honor.
 9             THE COURT:  Now, that you have been advised of the
10   charges against you, the possible penalties that you face, and
11   the rights that you are giving up, is it still your intention
12   to plead guilty to Counts One, Two, Three, and Four of the
13   information?
14             THE DEFENDANT:  Yes, your Honor.
15             THE COURT:  Is your plea voluntary and made of your
16   own free will?
17             THE DEFENDANT:  Yes, your Honor.
18             THE COURT:  Mr. Scott, with respect to Count One, how
19   do you plead; guilty or not guilty?
20             THE DEFENDANT:  Guilty, your Honor.
21             THE COURT:  With respect to Count Two, how do you
22   plead?
23             THE DEFENDANT:  Guilty, your Honor.
24             THE COURT:  With respect to Count Three, how do you
25   plead?
```

L5QsSCOp

1           THE DEFENDANT:  Guilty, your Honor.

2           THE COURT:  With respect to Count Four, how do you

3   plead?

4           THE DEFENDANT:  Guilty, your Honor.

5           THE COURT:  I will now ask you to tell me in your own

6   words what you did that makes you guilty of those crimes.

7           THE DEFENDANT:  In 2015, I was working as an executive

8   vice president of operations for SA Exploration, a publicly

9   traded side I can data acquisition company.

10          THE COURT:  Hold on.  Let me just slow you down for

11  the benefit of the court reporter.

12          SA, letter S, letter A, Exploration, correct?

13          THE DEFENDANT:  Correct.

14          THE COURT:  Go ahead, sir.

15          THE DEFENDANT:  OK.  I apologize.

16          That year, Alaskan Seismic Ventures, a data library

17  company, contracted for SAE to provide GFA acquisition services

18  for ASV.  In late 2015, after learning that ASV could not pay

19  SAE for work SAE had done, I agreed with others to create false

20  documents that made it appear that SAE had rented seismic

21  equipment from another company, Global Equipment Solutions,

22  GES.

23          In connection --

24          THE COURT:  I'm sorry.  Let me stop you again.

25          Global Equipment -- what was the third name?

L5QsSCOp

1              THE DEFENDANT:  Solutions.

2              THE COURT:  Solutions.

3              Global Equipment Solutions, GES.  Thank you.

4              THE DEFENDANT:  Yes.

5              In connection with SAE's work for ASV, I knew,

6    however, that SAE did not actually rent this equipment from

7    GES.  By preparing these documents, I knew that GES would

8    invoice SAE for these supposed rentals, which SAE then paid to

9    GES.  I did this understanding that the money paid to GES would

10   go through ASV, which would then enable ASV to pay SAE.  As a

11   result, SAE paid GES approximately $12 million in fake expenses

12   that SAE should not have paid.  I agreed to do this because I

13   understood it was likely the only way that SAE would be able to

14   survive financially, pay its employees and vendors, and avoid

15   bankruptcy.

16              I knew that this had the effect, among other things,

17   of making SAE's public filings inaccurate and misleading.  I

18   also knew that information being provided to SAE's auditors was

19   inaccurate.

20              I know that after this happened, SAE's stock, which

21   traded on the NASDAQ, continued to be purchased and sold.  I

22   also understand that, as part of this conduct, wires were used,

23   for example, to make payments and telephone calls.

24              I knew what I was doing was wrong.

25              THE COURT:  Ms. Castellano, do you believe that is a

L5QsSCOp

1   sufficient factual predicate for the guilty plea?

2          I know that you wish to make a proffer and that you

3   need to connect up the venue element.  But before that, are

4   there any additional questions you would like me to ask the

5   defendant?

6          MS. CASTELLANO:  No additional questions, your Honor.

7   Thank you.

8          THE COURT:  All right.  Now, Mr. Scott, did your

9   attorney help prepare the testimony you just gave?

10         THE DEFENDANT:  Yes, I worked with my attorney on

11  this.

12         THE COURT:  Do you adopt those words as your own?

13         THE DEFENDANT:  Yes, I do.

14         THE COURT:  Is everything that you just told me true?

15         THE DEFENDANT:  Yes, it is.

16         THE COURT:  All right.  Ms. Castellano, does the

17  government represent that it has sufficient evidence to

18  establish guilt beyond a reasonable doubt at trial and would

19  you like to make a proffer?

20         MS. CASTELLANO:  Yes, your Honor.

21         The evidence at trial would include, among other

22  things, e-mail messages, bank records, and SEC filings, as well

23  as witness testimony, including the testimony of the company

24  that is SAE's outside auditor, shareholders, and bondholders,

25  among others.

L5QsSCOp

1          THE COURT:  Now what took place in the Southern

2     District of New York?

3          MS. CASTELLANO:  Yes, your Honor.

4          As to Counts One and Two, venue is appropriate in the

5     Southern District of New York because, among other things, in

6     connection with efforts to secure a loan for ASV, one of the

7     conspirators sent an e-mail message via SAE's e-mail servers,

8     which were located outside the State of New York, to financial

9     institutions in the Southern District of New York, falsely

10    representing that SAE did not provide any funds to ASV.

11         And, among other things, SAE investors in the Southern

12    District of New York reviewed the SEC filings that contained

13    the falsely inflated revenue and other false statements and

14    omissions.

15         As to Counts Three and Four, venue is appropriate in

16    the Southern District of New York because the scheme to

17    misappropriate SAE's funds utilized interstate wires, including

18    e-mails and telephone calls to and from New York, New York,

19    such as an e-mail message sent from an SAE server outside the

20    State of New York to an employee of a financial institution

21    located in the Southern District of New York, regarding an

22    account that was used to, among other things, hold and

23    distribute certain of the misappropriated funds.

24         THE COURT:  Let's just do belt and suspenders here.

25         Ms. Berman, does your client waive any objections to

L5QsSCOp

1    venue in the Southern District of New York?

2              MS. BERMAN:  Yes, your Honor.

3              THE COURT:  All right.  Mr. Scott, on the basis of

4    your responses to my questions and my observations, not really

5    my observations, but my --

6              Is it observation when you're just listening to

7    somebody?

8              On the basis of your responses to my questions and my

9    ability to listen to the tone of your voice, I find that you

10   are competent to enter a guilty plea.  I am satisfied that you

11   understand your rights, including your right to have your case

12   considered by a grand jury, which you waived, and your right to

13   go to trial, which you also waived.

14             I conclude that you are aware of the consequences of

15   your plea, including the sentence that may be imposed, that you

16   are voluntarily guilty, and that you have admitted that you are

17   guilty as charged in Counts One through Four of the

18   information.

19             For these reasons, I will recommend that the district

20   judge accept your plea.

21             I take it that there is no sentencing date at this

22   time, correct, Ms. Castellano?

23             MS. CASTELLANO:  That's correct.

24             THE COURT:  All right.  I will nonetheless ask the

25   government to order a transcript and submit it to the district

L5QsSCOp

```
 1   judge, together with the additional paperwork that he will need
 2   to act on my recommendations.  The presentence report will not
 3   be prepared yet, so we won't do that, but we do need to discuss
 4   conditions of release.
 5           Ms. Castellano, have you and Ms. Berman discussed
 6   that?
 7           MS. CASTELLANO:  We have, your Honor.  We have put
 8   together a bail package for your Honor's consideration, but I'm
 9   happy to present now.
10           THE COURT:  Go ahead.
11           MS. CASTELLANO:  It would include a $100,000 personal
12   recognizance bond, secured by $10,000 cash, and cosigned by two
13   financially responsible people.  Pretrial supervision as
14   directed.  Travel restricted to Canada, the Southern District
15   of New York, the Eastern District of New York, and the District
16   of New Jersey, and points in between for travel.  That the
17   defendant refrain from communication --
18           THE COURT:  Hold on.  Is the District of New Jersey in
19   there because that is where the Newark Airport is, or for some
20   other reason?
21           MS. CASTELLANO:  It is for the airport, your Honor.
22           THE COURT:  So the District of New Jersey is only for
23   transit purposes, correct?
24           MS. CASTELLANO:  That's correct, your Honor.
25           THE COURT:  He's not going to be going to the Jersey
```

L5QsSCOp

```
 1   Shore and hanging out on the beach?

 2             MS. CASTELLANO:  That's my understanding.

 3             THE COURT:  OK.  Go ahead.

 4             MS. CASTELLANO:  That's correct.

 5             THE COURT:  All right.

 6             MS. CASTELLANO:  Refrain from communications with

 7   coconspirators, known witnesses, or victims outside the

 8   presence of counsel.  And refrain from the conduct alleged

 9   within the charging document.

10             All conditions to be met within two weeks, which is

11   June 9, 2021.

12             THE COURT:  He need not surrender his passport,

13   obviously, because he needs to travel back and forth?

14             MS. CASTELLANO:  That's correct, your Honor.

15             THE COURT:  OK.  Backing up a little bit, you said no

16   contact with coconspirators.  By coconspirators, do you mean

17   the now codefendants in the same case?

18             MS. CASTELLANO:  Yes, your Honor.

19             THE COURT:  All right.  So let's say codefendants

20   there.

21             Known witnesses and known victims, is that correct?

22             MS. CASTELLANO:  That's right.

23             THE COURT:  And you said that the defendant is to

24   refrain from the conduct alleged in the information.  That's a

25   little vague for my taste.
```

L5QsSCOp

1          Can you be more specific, or do you need that at all,

2     since it is always a condition of release that the defendant

3     commit no crimes?

4          MS. CASTELLANO:  We do not need it, your Honor.

5          THE COURT:  Great.  We will just take that out.

6          All right.  Any clarifications or requests,

7     Ms. Berman?

8          MS. BERMAN:  No, your Honor.

9          THE COURT:  OK.  Having reviewed the file in this

10    matter, Mr. Scott, and on the joint recommendation of counsel,

11    I will release you on the following agreed upon conditions:

12          You will sign a personal recognizance bond in the

13    amount of $100,000.  It must be cosigned by two financially

14    responsible persons acceptable to the U.S. Attorney's office in

15    the Southern District of New York.  It will be secured by

16    $10,000 cash.

17          Your travel in the United States will be restricted to

18    the Southern and Eastern Districts of New York.  And

19    additionally, you may transit through the District of New

20    Jersey, but that is only in order to come to and from court

21    here in the Southern District of New York.  The Eastern

22    District is in there, as you probably know, because that is

23    where the other two airports are, La Guardia and Kennedy.

24          For other travel restrictions are simply the nation of

25    Canada.  You are not to go jetting off to Europe this summer no

1    matter whether you have a vaccine passport or not.  You will be

2    subject to pretrial supervision as directed by pretrial

3    services.  You will have no contact with your codefendants,

4    with the known witnesses, or the known victims, except in the

5    presence of counsel.

6              Is that correct, Ms. Castellano?

7              MS. CASTELLANO:  Yes, your Honor.

8              THE COURT:  And you will have two weeks to comply with

9    the conditions that require you to do something affirmative,

10   such as signing a bond, having your cosigners sign the bond,

11   and securing a bond with cash.

12             Did I miss anything, counsel?

13             MS. CASTELLANO:  No, your Honor.  Thank you.

14             MS. BERMAN:  Your Honor, I think you did not say

15   points in between because I know you -- I think I missed that.

16   But I would just note that if he takes a connecting flight,

17   there might be layovers in other places in the U.S.  Perhaps if

18   you could just say points in between, as necessary for transit

19   to the Southern District of New York.

20             THE COURT:  That's fine.  I will write it that way and

21   that is understood.

22             You don't have to take a direct flight.  You should,

23   in my opinion, but if you can't get one, you can change planes

24   and so on in order to get here when you need to be here.

25             MS. BERMAN:  Thank you.

L5QsSCOp

1          THE COURT:  Let me warn you, Mr. Scott, let me give

2     you the bail warnings here.

3          If you fail to appear in court when you need to be

4     here or if you violate any of the conditions of your release,

5     the following things will happen:

6          A warrant will be issued for your arrest.  You and

7     anyone who cosigned your bond can each be made responsible for

8     paying the full amount.  And you can be charged with a separate

9     crime known as bail-jumping.  In addition, if you commit any

10    new crime while you are released on bail in this case, that may

11    lead to a more severe punishment than you would get for

12    committing the same crime if you were not on bail at this case

13    at the time.  You would, in fact, be sentenced to an additional

14    term of imprisonment, which could be up to ten years, if the

15    new offense is a felony, up to one year if the offense is a

16    misdemeanor.  That term will be executed after and on top of

17    any other sentence of imprisonment is completed.

18         Of course, if you commit a crime or violate your plea

19    agreement with the government in any way, you will risk

20    revocation by the government of your plea agreement with all of

21    the consequences described in that agreement.

22         Do you understand what I have told you?

23         THE DEFENDANT:  Yes, I do, your Honor.

24         THE COURT:  All right.  Anything further on this

25    matter from either side?

L5QsSCOp

1              MS. BERMAN:  No, your Honor.  Thanks very much.

2              MS. CASTELLANO:  No, your Honor.  Thank you.

3              THE COURT:  Thank you very much.  We will be

4     adjourned.

5              (Adjourned)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25